<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FESTIVAL FUN PARKS, LLC, : | |
| : | Civil Action No. 12-410 (FSH) (MAH) |
| Plaintiff, : | |
| : | |
| v. : | REPORT AND |
| : | RECOMMENDATION |
| MOUNTAIN CREEK RESORT, INC., : | |
| : | |
| Defendant. : | |

**I.    INTRODUCTION**

This matter comes before the Court on the motion of Defendant Mountain Creek Resort, Inc. ("MCRI") seeking an Order for Instructions to the Accountant on the Proper Method for Calculation of Unamortized Costs of Tenant Improvements.  Before the Court can resolve that motion, however, it must first address the parties' disagreement about the scope of the parties' consent to Magistrate Jurisdiction.  Accordingly, the District Court referred the motion to the Undersigned for a Report and Recommendation.  For the reasons set forth below, the Undersigned respectfully recommends that the District Court conclude that the parties have consented to conduct all proceedings before the Undersigned, and that Defendant's motion be denied.

**II.   BACKGROUND**

**A.  Factual Background**

This action arises from a lease agreement between Plaintiff Festival Fun Parks, LLC d/b/a Palace Entertainment ("Palace") and Defendant MCRI.  Defendant owns property in Vernon, New Jersey known as "Mountain Creek Resort," which includes the operation of a ski resort in

the winter and a water park in the summer.  See Pl.'s Compl., D.E. 1 ¶ 6.  Plaintiff was the successor-in-interest to the original tenant of Defendant's water park under a Lease Agreement (the "Lease"), dated May 15, 2001.  Id. at ¶ 8.  Under the Lease, Plaintiff and Defendant shared employees, services, and facilities.  Id. at ¶ 9.

Plaintiff alleges that at Defendant's request, it made extensive capital improvements to the water park, which was initially in "poor" and "out-dated" condition.  See id. at ¶ 12; Pl.'s Am. Compl., D.E. 60 ¶ 9.  For example, Plaintiff claims that during the ten years of Plaintiff's ownership and operation of the water park, Plaintiff substantially improved the business, appearance, and staffing at the water park.  See Pl.'s Compl., D.E. 1 ¶ 14.  The annual revenue in 2011 from Plaintiff's business at the water park exceeded $6,000,000.  Id. at 15.  Plaintiff alleges that during the Lease term, Defendant, through its officers, agents, and employees, made unreasonable demands and imposed unreasonable standards of performance upon Plaintiff, so that Defendant could ultimately displace Plaintiff as the licensed operator of the water park.  Id. at ¶ 17.  Specifically, Plaintiff claims that Defendant seeks to replace Plaintiff's business, use Plaintiff's capital improvements, and take advantage of Plaintiff's efforts in order to operate its own water park business.  Id. at ¶ 20.

On November 21, 2011, Defendant alleges that it exercised its contractual right under Section 21.1 of the Lease to terminate the Lease and ancillary agreements concerning the water park.  Id. at ¶ 20.  Thereafter, Plaintiff surrendered possession of the premises to Defendant.  See Pl's Am. Compl., D.E. 60, ¶ 26.  Plaintiff claims that under the Lease, upon termination, it is entitled to seek a termination payment, which consists of:  (1) four times the earnings before interest, taxes depreciation and amortization ("EBITA") and (2) the unamortized cost of Tenant Improvements as defined and calculated according to the Lease's terms.  See Joint Status Report, D.E. 72 ¶ 2.  While Plaintiff claims that it is entitled to approximately $1,983,000 in unamortized

costs of Tenant Improvements as part of its claim for a termination payment of almost $10 million, Defendant asserts that Plaintiff is not entitled to any payment for unamortized costs of Tenant Improvements.  See Decl. of Paul R. DeFilippo for Def's Mot. for Instructions, D.E. 71, ¶ 10.  The parties agreed on the appointment of a certified public accountant to resolve the amount of the Lease's termination payment.  See Joint Letter, D.E. 55.

### B. Procedural History

Plaintiff filed its Complaint on January 23, 2012 based solely on alleged violations of the New Jersey Franchise Practices Act, N.J.S.A. § 56:10-1 et seq. (2012) ("NJFPA").  See Pl.'s Compl., D.E. 1.  The Complaint sought preliminary restraints enjoining Defendant from terminating the Lease and ancillary agreements.  See id.  On February 3, 2012, the District Court denied Plaintiff's application for declaratory judgment, preliminary and permanent injunctive relief and damages.  See Order, D.E. 15.  Defendant later filed an Amended Answer and Counterclaims, and Plaintiff replied to the Counterclaims.  See Def.'s Am. Answer, D.E. 19; see also Pl.'s Answer to Counterclaim, D.E. 25.  At the conclusion of the preliminary injunction hearing, the Court offered to appoint an accountant if the parties could not resolve the amount of the termination payment under the Lease.  See Joint Letter, D.E. 55.

On July 27, 2012, Plaintiff filed a Motion to Compel Arbitration and for the Appointment of an Accountant to calculate the termination payment allegedly due to Plaintiff under the Lease.  See Pl.'s Mot. to Compel, D.E. 29.  Defendant opposed the motion on the grounds that Plaintiff neither pled Defendant's breach of the Lease in its Complaint nor sought any relief under the Lease.  See Def.'s Response to Mot., D.E. 32.  Defendant also filed a Motion for Summary Judgment seeking dismissal of all counts of the Complaint.  See Def.'s Mot. for Summary Judgment, D.E. 34.  The Court administratively terminated both motions on February 26, 2013 as a result of the parties' February 1, 2013 status conference.  See D.E. 53.

On September 30, 2013, the parties jointly filed a Stipulation and Order ("Stipulation"): (1) dismissing Plaintiff's franchise claims; (2) allowing Plaintiff to amend its Complaint and to assert a claim for breach of the Lease; and (3) providing a framework for the consensual appointment of an accountant to determine the unamortized cost of Tenant Improvements. See Stipulation, D.E. 59. Of particular importance in the context of this motion, both Plaintiff and Defendant stipulated to the following:

> 7. MCRI's claims against Plaintiff for damages and other amounts allowable for breaches of the Lease, and any other claims asserted by MCRI as counterclaims to the Amended Complaint, <u>will be heard in a bench trial before the Magistrate Judge. The parties consent to trial of MCRI's claims for breaches of the Lease, and otherwise, by the Magistrate Judge without a jury</u>.

See Stipulation, D.E. 59, ¶ 7 (emphasis added). Subsequently, Plaintiff filed its Amended Complaint on October 9, 2013. See Pl.'s Am. Compl., D.E. 60.

In addition, the parties agreed to appoint Edward A. Phillips, CPA/CFF, CIRA, CFE ("Mr. Phillips" or the "Accountant") as the accountant who would be responsible for calculating the unamortized cost of Tenant Improvements and trailing EBITA under the Lease. See Decl. of Paul R. DeFilippo for Def's Mot. for Instructions, D.E. 71, ¶¶ 7-8. However, after a conference with the parties, Mr. Phillips has determined that he will not interpret the Lease to calculate the unamortized cost of Tenant Improvements. Id. at ¶ 11. Instead, Mr. Phillips requested that an application be made to the Court for instructions on how to interpret the Lease to make his calculations. Id. Accordingly, on April 24, 2014, Defendant filed a motion seeking an Order for Instructions to the Accountant on the Proper Method for Calculation of Unamortized Costs of Tenant Improvements ("Motion for Instructions"). See Def.'s Mot. for Instructions, D.E. 70, 71.

In support of the Motion for Instructions, Defendant submits a copy of the parties' Lease. See Ex. A of Decl. of Paul R. DeFilippo for Def.'s Mot. for Instructions, D.E. 71. Defendant cites to § 21.1(c) of the Lease, which states that as a condition "to Landlord's obligation to make

4

the termination payment hereunder, Tenant shall be required to reasonably substantiate its calculation of . . . the unamortized cost of the Tenant Improvements . . . ." Id.  In addition, before starting constructions on a Tenant Improvement, Palace "shall have received [MCRI's] written approval." Id.  Defendant contends that the parties have only followed this approval process once.  See Decl. of Paul R. DeFilippo for Def's Mot. for Instructions, D.E. 71, ¶ 17.  Thus, Defendant argues that the only possible improvement eligible to be compensated as a Tenant Improvement is the "Pipeline Ride," which costs $587,500.00.  Id. at ¶¶ 17-18; see also Ex. B of Decl. of Paul R. DeFilippo for Def.'s Mot. for Instructions, D.E. 71.  Nevertheless, Defendant argues that because the Pipeline Ride was not removed within the allowable sixty days under the Lease and there was no agreement in writing that it was to remain on the property after the Lease's termination, Plaintiff is not entitled to compensation.  See Decl. of Paul R. DeFilippo for Def's Mot. for Instructions, D.E. 71, ¶¶ 18-21.  Defendant wants the court to instruct the Accountant on how to calculate the costs of Tenant Improvements.  Id. at ¶ 22.  This includes considering whether there was reasonable substantiation of an expenditure as a Tenant Improvement, and whether there was a written agreement between the parties that an Improvement will remain in the water park.  Id.

      Plaintiff opposed Defendant's motion on May 19, 2014.  See Pl.'s Opp'n Br., D.E. 75.  Plaintiff concedes that under the Lease, Defendant was to approve all Tenant Improvements in writing, but argues that the parties' "working relationship was otherwise." Id. at 4.  For example, Plaintiff claims that it was in constant discussions with Defendant about improvements and investments.  Id.  In support of this claim, Plaintiff submits an undated letter from Defendant explaining the annual negotiation of capital investments and improvements.  See Ex. C of Pl.'s Opp'n Br., D.E. 75.  Further, Plaintiff argues that its agreement with Defendant about what improvements are to be left on the premises and be eligible for compensation was based on

5

conversations between Michael Friscia, the Vice President of Palace, and Paul Jorgenson, the President of MCRI. See Dec. of Michael Friscia for Pl.'s Opp'n Br., D.E. 75, ¶¶ 1-3. Specifically, Plaintiff contends that there was verbal agreement that the Pipeline Ride would remain on the premises, and that its unamortized value would be awarded as part of the termination payment payable to Plaintiff. Id. at ¶ 5.

Defendant filed a reply brief on May 27, 2014. See Def.'s Reply, D.E. 76. In its reply, Defendant states, the Accountant "requires guidance from the Court in performing his function under the Lease so the calculation of the termination payment can be completed." Id. at 1. Defendant reiterates that its motion is "nothing more than a request for instructions in accordance with the Accountant's request." Id.

On July 17, 2014, there was a hearing held on the record before the Undersigned. See Transcript of July 17, 2014 Hearing, D.E. 82. The Undersigned noted that there is a Docket Entry, dated May 2, 2014, that is labeled "consent to jurisdiction by United States magistrate judge." Id. at 6:18-20. The Entry then states "See Doc. 59, paragraph 7," which is the parties' Stipulation. Id. at 6:21-23. As a result of this hearing, on July 18, 2014, the Court ordered each party to separately file a letter setting forth its positions as to what claims are to be adjudicated by Mr. Phillips, the District Judge, and the Magistrate Judge. See Order, D.E. 81. On August 8, 2014, both parties submitted letters outlining their respective positions. See Def.'s Letter, D.E. 83; Pl.'s Letter, D.E. 84. While Defendant claims that the parties have consented only to trial of the Counterclaim before the Magistrate Judge and matters related to trial of the Amended Complaint are before the District Judge, Plaintiff argues that the parties consented to have the Magistrate Judge preside over the entire case. Id. The parties also discuss their respective positions on Defendant's Motion for Instructions and whether this Court should give instructions to the Accountant. Id.

On September 8, 2014, the Court held an in-person status conference on the record to address Defendant's motion and the parties' August 8, 2014 letters. Subsequently, on September 9, 2014, the Court issued an Order administratively terminating the Motion for Instructions in order to resolve the jurisdictional issue of whether this matter shall proceed before the District Judge or the Magistrate Judge. See Order, D.E. 86. This Court must therefore first resolve whether the parties have consented to the jurisdiction of a Magistrate Judge. If so, this Court must then consider whether it would be appropriate for the Court to provide the Accountant with instructions on how to calculate the unamortized cost of Tenant Improvements under the Lease.

### III.   ANALYSIS

#### A. Magistrate Judge Jurisdiction

##### 1. Legislative History of the Federal Magistrate Act

Congress enacted the Federal Magistrate Act (the "Act") to address two major problems then facing the federal judiciary. See 28 U.S.C. §§ 631-639 (1988). First, the Act replaced United States Commissioners,[1] with a system of United States Magistrate Judges. Id. Second, in recognition of the problems that a rapidly increasing federal docket presented, Congress intended that Magistrate Judges would relieve District Judges of certain ministerial duties, thereby allowing District Judges more time for trial work.[2] Id. While Congress enumerated a number of tasks that Magistrate Judges could perform, the list is not exhaustive. Rather, Congress intended the statutory grants of authority to serve as a guide. See H.R. Rep. No. 1629. Congress

---

[1] In the legislative history accompanying the 1968 Act, Congress noted that the commissioners were of little help to federal district judges due to their extremely limited jurisdiction. Judges also had reservations regarding the competency of the commissioners. See H.R. Rep. No. 1629, 90th Cong., 2d Sess. 3 (1968).

[2] The fundamental purpose of the Act was "to cull from the ever-growing workload of the U.S. district courts matters that are more desirably performed by a lower tier of judicial officers." See H.R. Rep. No. 1629.

recognized that the terms of the Act must be broad to permit judges to take an active role in determining the character of the new office.  Id.  The Act "allows U.S. magistrates to be assigned duties by the judges of the U.S. district courts in addition to those normally undertaken by U.S. commissioners today.  These additional duties may include, but are not limited to, service as special masters, supervision of pretrial or discovery proceedings, and preliminary consideration of petitions for postconviction relief."  Id. (emphasis added).

Congress amended the Act in 1979, Pub. L. No. 96-82, 93 Stat. 643 (1979), and again in 1990.[3]  See Federal Magistrates Act of 1979, Pub. L. No. 101-650, 104 Stat. 5089 (1990).  Most notably, in its current version, the Act confers broader power on Magistrate Judges than the 1968 version did.  For example, a District Judge may refer any civil case or misdemeanor to a Magistrate Judge, so long as the parties consent.  Id.  Consent of the parties is the cornerstone of a Magistrate Judge's authority to preside over judicial proceedings.  For example, 28 U.S.C. § 636(c)(1) requires consent of parties before a magistrate may preside over civil trials.  Upon referral, the Magistrate Judge hears the case and may enter a final judgment in the matter.  See 28 U.S.C. § 363(c)(3).  Thereafter, the parties may appeal directly to an appropriate United States Court of Appeals.  See id.  Therefore, in giving Magistrate Judges "case-dispositive civil authority," Roell v. Withrow, 538 U.S. 580, 585 (2003), Congress hoped to relieve the district courts' "mounting queue of civil cases" and thus "improve access to the courts for all groups."  S. Rep. No. 96-74, 96th Cong., 1st Sess., p. 4 (1979).

 2. **Legal Standard**

Under the Act, the Magistrate Judge's jurisdiction may arise in one of three ways:

---

[3] Congress amended the Act several times since 1990.  However, the amendments after 1990 are not particularly relevant to the issue here.

(1) through the prior jurisdiction of a United States commissioner;[4] (2) through referral by a district judge;[5] and (3) through the consent of the parties. United States v. Douleh, 220 F.R.D. 391, 393 (W.D.N.Y. 2003). Regarding consent of the parties, the pertinent part of the Act provides, "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). A § 636(c)(1) referral gives the Magistrate Judge full authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review. See Roell, 538 U.S. at 585.

Section 636(c)(2) and Federal Rule of Civil Procedure 73(b) outline the procedures for a § 636(c)(1) referral. Once a Magistrate Judge obtains jurisdiction under section 636(c)(1), the clerk of the court will notify the parties of the availability of a Magistrate Judge. 28 U.S.C. § 636(c)(2). The parties will then convey their decision to the Clerk of the Court. Id. Further, under Rule 73(b) of the Federal Rules of Civil Procedure, the parties' selection of a Magistrate Judge will be "memorialized in 'a joint form of consent or separate forms of consent setting forth such election.'" See Fed. R. Civ. P. Form 34. Thus, the procedure resulting from 28 U.S.C. § 636(c)(2) and Rule 73(b) "envisions advance, written consent communicated to the clerk . . . ." Id.

---

[4] Under section 636(a), magistrate judges have "all powers and duties conferred or imposed upon United States commissioners by law . . . ." 28 U.S.C. § 636(a). Thus, magistrates have any powers and duties commissioners had at the time the Act was enacted in 1968. In re Search of Scranton Housing Authority, 487 F. Supp. 2d 530, 534 (2007).

[5] Under section 636(b)(1), a district judge may refer pretrial matters to the magistrate judge for a decision on non-dispositive pretrial matters or for a report and recommendation on dispositive pretrial matters. 28 U.S.C. § 636(b)(1)(A); § 636(b); see also Beazer East, Inc. v. Mead Corp., 412 F.3d 429, 438 n. 12 (3d Cir. 2005).

However, § 636(c) need not be strictly followed in order for the parties to consent to a Magistrate Judge's jurisdiction. Indeed, so long as consent is clear, it is effective. Lakeside Feeders, Ltd. v. Chicago Meat Processors, Inc., 31 F. Supp. 2d 1082, 1083 (N.D. Ill. 1999) (noting that the Seventh Circuit does not require a written consent but only that the consent be "unequivocal"). Moreover, consent may even be inferred from the parties' conduct. See Roell, 538 U.S. at 591.

3. Application

Here, while the parties did not provide a § 636(c)(2) letter, the parties consented to the Undersigned's jurisdiction by the Stipulation. See Stipulation, D.E. 59. Specifically, Paragraph 7 of the Stipulation begins by stating: "MCRI's claims against Plaintiff . . . will be heard in a bench trial before the Magistrate Judge." Id. at ¶ 7 (emphasis added). The next sentence confers plenary control over all remaining issues in the case to the Magistrate Judge: "The parties consent to a trial of MCRI's claims for breach of the Lease, and otherwise, by the Magistrate Judge without a jury." Id. (emphasis added).

Defendant argues that the parties have consented only to the Magistrate Judge's jurisdiction over the trial of its Counterclaim, which seeks a setoff of the relief Plaintiff is seeking for Plaintiff's alleged breach of the Lease. See Def.'s Letter, D.E. 83; Transcript of July 17, 2014 Hearing, D.E. 82, at 8:11-21. Defendant contends that its motion goes directly to the calculation of the termination payment, which is an essential element of trial on Plaintiff's Amended Complaint. Id. Thus, Defendant argues that matters related to trial of the Amended Complaint should be before the District Judge, while only its Counterclaim is before the Magistrate Judge. Id.

On the other hand, Plaintiff contends that a plain and natural reading of the Stipulation demonstrates that the parties intended the Magistrate Judge to have plenary power over all issues

10

in the case.  See Pl.'s Letter, D.E. 84.  The first sentence of Paragraph 7 of the Stipulation grants the Magistrate Judge authority specifically over Defendant's Counterclaims to Plaintiff's Amended Complaint.  Id.  However, the second sentence serves as a "catch-all," whereby the parties agree to Magistrate Judge jurisdiction for MCRI's Counterclaims "and otherwise," that is, any other claims to be tried without a jury.  Id.  Plaintiff argues that any other interpretation renders the second sentence of Paragraph 7 redundant.  Id.  Thus, Plaintiff emphasizes that the correct interpretation of the Stipulation is that the Accountant would rule on the EBITA and the unamortized cost of Tenant Improvements, and the Magistrate Judge would try the entire case, including Defendant's Counterclaims.  Id.

As Defendant acknowledges in its Letter, dated August 8, 2014, Defendant's Motion for Instructions centers on the Lease's terms, or the amount, if any, that Plaintiff is entitled to upon the Lease's termination.  See Def.'s Letter, D.E. 83.  Defendant's Counterclaims for Plaintiff's alleged breach of the Lease are also directly based upon the Lease's terms.  Specifically, Defendant seeks a setoff of the amount that Plaintiff requests under the Lease.  This Court thus agrees with Plaintiff that Defendant's Motion for Instructions and Defendant's Counterclaim for breach of the Lease may not be bifurcated between a District Judge and a Magistrate Judge.  Instead, the Court agrees with Plaintiff that a plain reading of Paragraph 7 of the Stipulation confers authority to the Magistrate Judge over Defendant's Counterclaims "and otherwise."  See Stipulation, D.E. 59 ¶ 7 (emphasis added).

In addition, the docket reflects that this case was assigned to a Magistrate Judge since at least May 2, 2014.  Neither side objected that the docket clearly stated that the parties consented to Magistrate Judge jurisdiction, until Defendant did so during the hearing on July 17, 2014.  Because the parties have voluntarily consented to the jurisdiction of the Magistrate Judge, the fact that the parties did not strictly adhere to the referral procedures in 28 U.S.C. § 636(c)(2) and

11

Federal Rule of Civil Procedure 73(b) does not eliminate the Magistrate Judge's "civil jurisdiction" under § 636(c)(1).  The United States Supreme Court and multiple District Courts have similarly held.  See, e.g., Roell v. Withrow, 538 U.S. at 580 (noting that while the procedures set forth in 28 U.S.C. § 636(c)(2) and Federal Rule of Civil Procedure 73(b) are not advisory, the text and structure of the section suggest a defect in referral does not render a magistrate judge's authority ineffective); King v. Ionization Int'l, Inc., 825 F.2d 1180, 1185 (7th Cir. 1987) (stating that the Act "does not require a specific form . . . of consent").

Further, even if there is no express consent, parties may impliedly consent.  For instance, in Roell, the Supreme Court held that the parties' general appearances before the Magistrate Judge after being informed of their right to be tried by a District Judge, provided the necessary consent for a Magistrate Judge's civil jurisdiction under § 636(c)(1).  See 538 U.S. at 581.  In this case, while the parties lacked a referral under § 636(c)(2), they still submitted an even stronger consent than in Roell by way of the Stipulation.  Thus, this Court finds that Paragraph 7 of the Stipulation confers this Court with civil jurisdiction over the entire case. [6]

### B. Defendant's Motion for Instructions

This Court must now determine whether it can provide instructions to the appointed Accountant on calculation methods for the unamortized cost of Tenant Improvements under the Lease.  The first issue to consider is whether the Federal Arbitration Act ("FAA") applies here.  See 9 U.S.C. § 1 et seq.  The purpose of the FAA is to "require courts to enforce privately negotiated agreements to arbitration, like other contracts, in accordance with their terms."  Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989).  As set

---

[6] On September 8, 2014, the Court administratively terminated Defendant's motion pending the resolution of the jurisdictional issue.  See Order, D.E. 86.  Because the Court has concluded that the Magistrate Judge has jurisdiction over the entire case, and the issue has been fully briefed, it is now ripe for consideration.

forth in Section 10 of the FAA, the grounds for judicial overturning of awards are extremely limited.  The United States Supreme Court and various District Courts have acknowledged Congress's intent to treat arbitration agreements the same as other contracts, and have also emphasized that an arbitrator's decision is generally final.  See, e.g., Oxford Health Plans, LLC v. Sutter, 133 S.Ct. 2064 (2013) (holding that an arbitrator's decision to grant class arbitration cannot be overturned if the decision was based on the interpretation of the parties' contract); see also Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003) (deciding that the FAA permits district courts to vacate arbitration awards "only under exceedingly narrow circumstances"); Antwine v. Prudential Bache Sec., Inc., 899 F.2d 410, 413 (5th Cir. 1990) ("Judicial review of an arbitration award is extraordinarily narrow.")

Moreover, courts have traditionally limited interlocutory rulings of arbitration awards.  See, e.g., In re Arbitration Between Michaels & Mariforum Shipping, S.A., 624 F.2d 411, 414 (2d Cir. 1980) (holding that judicial review was unavailable where arbitrators made an interim ruling that did not conclusively resolve the submitted issues).  For example, in Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co., the court noted, "judges must not intervene in pending arbitration to direct arbitrators to resolve an issue one way rather than another."  761 F.3d 635, 638 (7th Cir. 2011) (citing Trustmark Ins. Co. v. John Hancock Life Ins. Co., 631 F.3d 869 (7th Cir. 2011)).  Further, the court reasoned that judicial review is appropriate only at the "beginning or the end, but not in the middle."  Id.  In that case, the court concluded that once the parties appointed an arbitrator, the arbitration was "ongoing," which therefore prevented mid-arbitration review.  Id.

Here, like the parties in Blue Cross Blue Shield, Palace and MCRI appointed an accountant to resolve the amount of the Lease's termination payment, including the unamortized cost of Tenant Improvements.  See Joint Letter, D.E. 55.  Moreover, Mr. Phillips already "made

due inquiry of the parties and has examined books and records and has . . . completed one or two pieces of its charge." See Transcript of July 17, 2014 Hearing, D.E. 82, at 4:10-12.  The parties even held a conference with Mr. Phillips.  See Decl. of Paul R. DeFilippo for Def's Mot. for Instructions, D.E. 71, ¶ 11.  Thus, the arbitration is ongoing.  Accordingly, if the FAA does apply here, the parties may not seek mid-arbitration review from this Court.

The FAA applies here if the Accountant is an arbitrator.  In Levine v. Wiss & Co., defendant was an accounting firm hired to value the plaintiff's business interests.  97 N.J. 242, 244 (1984).  Notably, the Levine court distinguished between an "appraiser" and an "arbitrator." Id.  Accountants are appraisers who "engage[] in no adjudication and exercise[] no quasi-judicial power," while arbitrators "decide both the facts and the law," and whose dispositions are "afforded collateral estoppel effect by reviewing courts."  Id. at 401-02.  In Levine, the court concluded that the defendant did not exercise judicial authority, and therefore held that the accountants were not immune from legal responsibility for any malfeasance.  Id. at 402. Nevertheless, other courts have held that the use of the word "appraisal" rather than "arbitration" is not controlling.  Instead, the controlling question is one of function.  See, e.g., Penn Cent. Corp. v. Consol. Rail Corp., 82 A.D.2d 208, 271 (1981) (noting that the question is whether the third party's function is to resolve the very dispute between the parties).

In this case, the Accountant is much more akin to an arbitrator than an appraiser.  Mr. Phillips is tasked with resolving the termination payments, which is the central dispute at issue in this case.  Determining such payments involves deciding the unamortized costs of Tenant Improvements according to the Lease's terms.  Mr. Phillips's role, therefore, requires analyzing the Lease's terms and determining what constitutes a Tenant Improvement.  Mr. Phillips's role here effectively likens the Lease to an arbitration agreement.  See, e.g., United Refining Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 13-CV-909, 2013 WL 6578912, at *5 (E.D. Pa. Dec.

13, 2013) (noting that the language at issue contemplated a determination of liability, not just the amount of loss, thus likening the contract to an arbitration rather than an appraisal agreement). Still, even if the FAA does not apply, Defendant is essentially asking for an advisory opinion. Defendant argues that it mainly seeks a ruling to direct the Accountant on the "legal import of specific Lease terms." See Def.'s Letter, D.E. 83.  However, as Plaintiff points out, the Lease and the Stipulation already outline a detailed protocol for the Accountant's appointment and determination.  See Pl.'s Letter, D.E. 84.  For example, the Stipulation states that the Accountant will review the parties' submissions, including books and records, with respect to the costs, and will request additional information if necessary.  See Stipulation, D.E. 59.  For this reason, the Court declines to opine on the issue.  Id.

Indeed, federal judicial power is limited to disputes, which may be resolved through the judicial process.  Flast v. Cohen, 392 U.S. 83, 97 (1968).  Further, "[t]he Federal Rules of Civil Procedure do not provide for a motion to clarify[.]"  Trading Techs. Int'l v. BCG Partners, Inc., 883, F. Supp. 2d 772, 775 (N.D. Ill. 2012) (citing Mares v. Busby, 34 F.3d 553, 535 (7th Cir. 1994)) (reversed on other grounds, Trading Techs. Int'l v. Open E Cry, LLC, 728, F.3d 1309 (Fed. Cir. 2013)); see also In re Marron, No. 10-45395, 2011 WL 3800040, at *1 (Bankr. D. Mass. Aug. 29, 2011) ("The trustee's request for clarification as to whether the stay relief order adjudicates substantive rights of the parties is a request for an advisory opinion.  The bankruptcy court, as a unit of the United States District Court, does not issue advisory opinions."); Hulstedt v. City of Scottsdale, Ariz., No. 09-1258, 2011 WL 2836553, at *5 (D. Ariz. July 18, 2011) (denying motion to clarify a protective order as it would constitute an advisory opinion). However, if a court's order or opinion affects the rights of litigants, it is not an advisory opinion. See In re Lazy Days' RV Center Inc., 724 F.3d 418, 421 (3d Cir. 2013).

As Defendant acknowledged in its letter dated August 5, 2014, "Article III's 'case or

controversy' requirement prohibits federal courts from issuing advisory opinions on hypothetical and unripe claims." See Def.'s Letter, D.E. 83 (citing N.J. Hosp. Ass'n v. United States, 23 F. Supp. 2d 497, 503-04 (D.N.J. 1998)). Essentially, even if this Court entered an order instructing the Accountant on how to calculate the unamortized cost of Tenant Improvements under the Lease, the underlying dispute would remain unresolved because the Accountant still needs to make the relevant calculations. Defendant even admits that once the Court gives the Accountant instructions, the "Accountant can then apply the Court's instructions." Id. Thus, because any ruling from the Court would not "affect[] the rights of litigants," In re Lazy Days' RV Center Inc., 724 F.3d at 421, the Court is not being asked to resolve a case or controversy.

Pursuant to the Lease, only the Accountant's determination of the termination payment is "conclusive and binding." See Ex. A of Decl. of Paul R. DeFilippo for Def.'s Mot. for Instructions, D.E. 71. Paragraph 18.1(c) of the Lease provides, "the Parties shall jointly select an unrelated, third party accountant that shall examine Tenant's books and records to determine such amounts, which determination shall be conclusive and binding on the Parties." Id. (emphasis added). Making this determination involves examining Plaintiff's books and records and concluding what qualifies as a Tenant Improvement eligible for reimbursement, and the unamortized cost of such improvements. In other words, Mr. Phillips's role as the appointed accountant requires him to interpret the contract, or in this case, the Lease.

If the Accountant cannot determine what requirements Plaintiff must meet to recover for Tenant Improvements, the parties have several options other than requesting an advisory opinion. For example, like the Court,[7] the parties may propose to appoint an expert witness or technical

---

[7] Pursuant to Federal Rule of Evidence 706 and the inherent authority of the courts, federal courts have the authority to appoint neutral expert witnesses and technical advisors. See Fed. R. Evid. 706.

16

advisor.  See, e.g., Reilly v. United States, 863 F.2d 149, 161 (1st Cir. 1988) (noting that the parties themselves proposed the appointment of a technical advisor to resolve the relevant dispute).  The parties also have the option of stipulating to another accountant.  In any case, it is only after the Accountant makes a decision that the parties can appropriately seek judicial intervention.

## IV. Conclusion

For the foregoing reasons, the Undersigned respectfully recommends that the District Court find that the parties have consented to conduct all proceedings before the Undersigned, and that Defendant's Motion for Instructions [D.E. 70, 71] be **denied**.  The parties have fourteen days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and L. Civ. R. 71.1(c)(2).


*/s Michael A. Hammer*            
**United States Magistrate Judge**

Dated:  December 8, 2014